UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MOHAMED HASSAN BARKA,

               Petitioner,

vs.

JOHN MATTOS, NSDC WARDEN; MICHAEL BERNACKE, FIELD DIRECTOR, WEST VALLEY CITY OFFICE OF ICE ERO; TODD LYONS, ICE ACTING DIRECTOR; KRISTI NOEM, DHS SECRETARY; PAM BONDI, U.S. ATTORNEY GENERAL

               Respondents.

Case No.: 2:25-cv-01781-GMN-MDC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Mohamed Hassan Barka's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 17), and Motion for Temporary Restraining Order, (ECF No. 19). Respondents filed a Response to both the First Amended Petition and Motion for Temporary Restraining Order, (ECF No. 21). Because Petitioner is being unlawfully detained, the Court GRANTS the First Amended Petition.

**I.   LEGAL BACKGROUND**

    **A.  Removal Proceedings**

When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an Immigration Judge ("IJ"). 8 U.S.C. § 1229(a). Removal proceedings determine not only whether an individual may be removed from the United States but also to where he may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the noncitizen is also entitled to seek various protections, including asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1).  Some of these protections are discretionary. *See e.g.*, 8 U.S.C. § 1158; 8 C.F.R § 208.2.  Others are mandatory, meaning that protection must be given if the conditions are met.  Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds that the individual is likely to be tortured. *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024).

### B.  Reinstatement or Withholding-Only Proceedings

Alternatively, the U.S. Department of Homeland Security ("DHS") may reinstate a prior order of removal for a noncitizen it finds "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5).  When DHS reinstates a removal order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.*  DHS may also issue administrative removal orders to individuals whom DHS determines are not lawful permanent residents and who have an aggravated felony conviction. *See* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1.

While noncitizens are barred from pursuing nearly all avenues of relief from removal in both processes, they may still seek protection through withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT. 8 C.F.R. §§ 238.1(f)(3), 241.8(e).  If the noncitizen demonstrates a reasonable fear of persecution or torture, the noncitizen is placed in "withholding-only

proceedings" before an IJ where they can only seek withholding of removal and/or CAT protection. 8 C.F.R. §§ 208.31(b), (e); *see also* 8 U.S.C. § 1231(a)(5) (providing that a noncitizen subject to reinstatement "is not eligible and may not apply for any relief under [the Immigration and Nationality Act ("INA")]"); 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings. . . shall be limited to a determination of whether the [noncitizen] is eligible for withholding or deferral of removal.").

Withholding of removal and CAT protection only affect *where* the noncitizen may be removed, rather than *whether* the noncitizen may be removed; thus, even if a noncitizen prevails on his withholding or CAT claim, the removal order remains valid and enforceable, albeit not executable to the specific country as to which the noncitizen has demonstrated a likelihood of persecution or death. *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

**C. Third-Country Removals**

Because the removal proceedings happen on one track, while withholding and CAT proceedings happen on another track, a situation may arise where the Government has an order of removal but no country that an IJ has authorized for that removal.

In certain circumstances, where the Government may not remove a noncitizen to any country covered by that noncitizen's order of removal, the Government may still remove the noncitizen to any "country whose government will accept the [noncitizen] into that country." 8 U.S.C. § 1231(b)(2)(E)(vii). These are called "third-country removals." As relevant here, a specific carve-out prohibits deportation to countries in which the noncitizen would face persecution or torture:

> Notwithstanding paragraphs [b](1) and [b](2), the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or

> freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A).  Similarly, under the Foreign Affairs Reform and Restructuring Act of 1998, which codified CAT protections, a noncitizen may not be removed to any country where they would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18.  In other words, third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings.

## II. FACTUAL BACKGROUND

On March 30, 2025, Respondent Kristi Noem, the DHS Secretary, issued guidance, (the "Memo"), to Immigration and Customs Enforcement ("ICE") and other DHS agencies regarding third-country removals.  This Memo states that, prior to a noncitizen's removal to a third country, "DHS must determine whether that country has provided diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured." (Guidance Regarding Third Country Removals at 3, Ex. 3 to First Amend. Pet., ECF No. 18-3). The Memo also says that, where a country has provided such assurances and the State Department believes them to be credible, a noncitizen may be removed to that country "without the need for further procedures." (*Id.*).

If the United States has not received those assurances or if the State Department does not believe them to be credible, the Memo instructs DHS to follow certain procedures. (*Id.* at 4).  In such cases, DHS will inform the noncitizen of removal to the intended country but will not affirmatively ask the noncitizen if they fear being removed to that country. (*Id.*).  DHS will refer any noncitizen that affirmatively states a fear of removal to a third country to United States Citizenship and Immigration Services ("USCIS") for a screening for eligibility for withholding of removal and/or CAT protection as to the intended third country.  USCIS will then determine whether the noncitizen has established that they will "more likely than not be

persecuted on a statutorily protected ground or tortured in the country of removal." (*Id.*). If USCIS determines that the noncitizen did not meet that burden, they will be removed. (*Id.*). If USCIS determines that the noncitizen has met this standard and the noncitizen was not previously in proceedings before the Immigration Court, USCIS will refer the matter to the Immigration Court in the first instance. (*Id.*). In cases where the noncitizen was previously in proceedings before the Immigration Court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. (*Id.*). The ICE Office of the Principal Legal Advisor may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals as appropriate for further proceedings for the sole purpose of determining eligibility for protection under INA § 241(b)(3) and CAT for the country of removal. (*Id.*). Alternatively, ICE may choose to designate another country for removal. (*Id.*).

On July 9, 2025, Respondent Todd Lyons, Acting ICE Director, sent additional guidance, (the "Directive"), to ICE employees regarding third-country removals. (*See* Directive to ICE Employees, Ex. 4 to First Amend. Pet., ECF No. 18-4). The Directive was issued in light of the Supreme Court's decision to stay the injunction in the case *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass.), *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025). The Directive reiterated the procedures from the Memo.

It added that, in cases where countries have not provided credible assurances or the State Department does not find an assurance to be credible, an ICE officer will serve the noncitizen with a Notice of Removal which includes the intended country of removal and that the notice will be read in a language the noncitizen understands. (*Id.* at 2). The Directive explains that ICE "will generally wait at least 24 hours following service of the Notice of Removal before

effectuating removal" but that in "exigent circumstances" ICE may remove a noncitizen to a third country in as little as six hours after service of the Notice of Removal "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal." (*Id.*).  Any removal under exigent circumstances must also be approved by DHS General Counsel or the Principal Legal Advisor if the DHS General Counsel is unavailable. (*Id.*).

On November 3, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, (ECF No. 6), under 28 U.S.C. § 2241.  Respondent filed a Response ("Pet. Resp."), (ECF No. 12), and the Court thereafter appointed counsel for Petitioner *sua sponte*. (*See* Order Appointing Counsel, ECF No. 13).  On December 16, 2025, Petitioner filed a First Amended Petition for Writ of Habeas Corpus and a Motion for Temporary Restraining Order, and Respondent filed an omnibus Response to both filings ("First Amend. Pet. Resp."), (ECF No. 21).

Petitioner, a citizen of Egypt, arrived in the United States in September 2024 and applied for asylum, seeking to avoid potential persecution in Egypt for engaging in a homosexual relationship with the son of an Egyptian police officer, who has since gone missing. (First Amend. Pet. 14:10–14, ECF No. 17).  Petitioner has been detained in DHS custody since September 2024. (*Id.*).  On January 15, 2025, an IJ found that Petitioner was inadmissible under §§ 212(a)(7)(i)(1) and 212(a)(6)(A)(i) of the INA and denied Petitioner's request for asylum and withholding of removal under the CAT. (IJ Order at 1, Ex. A to Pet. Resp., ECF No. 12-1). The IJ granted Petitioner's request for withholding of removal under INA § 241(b)(3) as to Egypt, and alternatively ordered that Petitioner be removed to Italy. (*Id.* at 1, 3).  Both Petitioner and DHS waived appeal, and the IJ Order is now final. (First Amend. Pet. 14:17–18). The statutory 90-day window to remove Petitioner commenced on January 15, 2025, and expired on April 15, 2025. (*Id.* 14:18–19).

Because of his withholding of removal status, Petitioner cannot be removed to Egypt. Moreover, the ICE officer overseeing Petitioner's case informed him that Italy had refused to accept him, and that three other third countries—Canada, Spain, and France—had also refused to accept him. (*Id.* 14:20–15:2). Petitioner was told that ICE is still trying to find another country that will accept him. (*Id.* 15:2–4). During his detention, Petitioner has been given two "custody reviews," in which he was given and required to sign two notices which denied him release, provided no reasons for his continued detention, and informed him that he would remain in detention until his next custody review in 90 days. (*Id.* 15:5–9). Petitioner subsequently received a third notice which he was required to sign that contained no end date to his detention or any timeline for his next custody review. (*Id.* 15:9–12).

Over eleven months since his removal order became final, Petitioner remains detained at the Nevada Southern Detention Center ("NSDC") in Pahrump, Nevada. (*Id.* 3:12–13). With his First Amended Petition, Petitioner challenges his continued detention and requests immediate release.

### III.     LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## IV. DISCUSSION

Petitioner alleges that his continued detention is unlawful on five grounds. First, Petitioner alleges that his continued detention violates the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable. (First Amend. Pet. 16:2–3). Second, he argues that his continued detention violates the Immigration Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6). (*Id.* 17:22–23). Third, he contends that his detention violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). (*Id.* 18:8–10). Fourth, Petitioner argues he is entitled to habeas relief because ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection constitutes arbitrary and capricious agency action in violation of the APA and the Fifth Amendment. (*Id.* 21:1–4). Finally, Petitioner contends that, to the extent that his detention is meant to facilitate his removal to a third country, that detention is unlawful because ICE's procedure for third country removal would be accomplished in violation of his due process rights. (*Id.* 22:15–17). The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

### A. Petitioner's Detention Violates the Fifth Amendment

Petitioner argues that his continued detention violates his due process rights under the Fifth Amendment because his removal is not "reasonably foreseeable" as contemplated in *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). (17:14–16). He further contends in ground two that his detention violates § 1231(a) of the INA for the same reasons. (*Id.*). Although Petitioner frames his *Zadvydas* claim as both a constitutional challenge under the Fifth Amendment and a statutory challenge under § 1231(a), whether his detention, at this point, "bear[s] [a] reasonable relation to the purpose for which [he is] committed" is a question of due process under the Fifth Amendment. *See Zadvydas*, 533 U.S. at 690. Accordingly, the Court considers § 1231(a) only to the extent it bears on Petitioner's due process claim. Insofar as Petitioner brings a stand-alone challenge under the INA, the Court does not reach that challenge.

The Supreme Court has explained the provisions of § 1231(a) as follows:

> Once [a noncitizen] is ordered removed, DHS must physically remove him from the United States within a 90-day "removal period." 8 U. S. C. § 1231(a)(1)(A). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2).

*Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by DHS that "removal is not practicable or proper." *Id.* at 528–29.

Because "[a] statute permitting indefinite detention. . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id*. at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. "[A noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

Here, Petitioner's detention has surpassed the six-month period of presumptive reasonableness. Petitioner's removal order became final on January 15, 2025, and the 90-day

removal period under 8 U.S.C.A. § 1231 concluded on April 15, 2025. (First Amend. Pet. 14:17–19). The six-month period of presumptive reasonableness under *Zadvydas* thus lapsed on July 15, 2025, six months after the removal order became final. Before confinement exceeds the six-month mark, "the *detainee* must prove the unreasonableness of detention and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity." *Sweid v. Cantu*, No. CV-25-03590-PHX-DWL (CDB), 2025 WL 3033655, at *4 (D. Ariz. Oct. 30, 2025) (quoting *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008)). But "[a]fter the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the *government* must then *disprove*." *Id.* (quoting *Cesar*, 542 F. Supp. 2d at 903). Not only has the six-month period of presumptive reasonableness lapsed here, but Petitioner's prior post-removal detention has now spanned almost an entire year. The Supreme Court has explained that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701. "And as time passes, the burden on the government increases accordingly." *Sweid*, 2025 WL 3033655, at *4 (quoting *Cesar*, 542 F. Supp. 2d at 903).

In the context of Petitioner's prolonged detention, the factual situation here provides good reason to believe that removal is not significantly likely in the reasonably foreseeable future. Petitioner was granted withholding of removal and cannot be removed to Egypt, the only country of which he is a citizen. (First Amend. Pet. 14:20). Though the IJ alternatively ordered Petitioner removed to Italy, Italy has refused to accept him because he is not an Italian citizen. (*Id.* 17:5–7). No other third country has accepted Petitioner, and Petitioner was recently told that no third country designation has been made. (*Id.* 17:7–10). Thus, Petitioner has satisfied his initial burden under *Zadvydas*.

Respondents offer no details or evidence to rebut that showing. (*See generally* First Amend. Pet. Resp., ECF No. 21). Instead, Respondents argue that the factual allegations put forth by Petitioner lack the requisite specificity to satisfy Petitioner's burden. This Court disagrees. Respondents' contention that the Court should require Petitioner to produce with specificity "whether additional requests are pending, or whether DHS is continuing to pursue removal efforts" is incorrect; Petitioner cannot be expected to have information that only DHS has access to, and his burden is not to establish with certainty where DHS's removal efforts currently stand. (First Amend. Pet. Resp. 5:24–26). Moreover, Petitioner's allegation that ICE has made no third country designation despite his rejection from several countries demonstrates that DHS is not actively seeking removal.

Respondents' argument that Petitioner must provide "evidence that DHS has reached a dead end" fares no better. (*Id.* 5:27–28). Petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *Zadvydas*, 533 U.S. at 702. He need only show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Id.* at 701. Petitioner's statements that he has been detained for almost a full year, was granted withholding of removal to Egypt, and has not been accepted by Italy, Canada, Spain, or France are enough for the Court to conclude that Petitioner has met that burden.

Meanwhile, Respondents provide no evidence rebutting Petitioner's showing, nor do they provide any details regarding DHS's efforts to effectuate removal. Indeed, Respondents admit that DHS has not designated a third country for Petitioner's removal. (First Amend Pet. Resp. 6:13–14). In their Response to the original Petition, Respondents made only a conclusory statement that "DHS has sought to obtain travel documents to effectuate Petitioner's removal to Italy." (Pet. Resp. 2:11–12). Not only is that assurance contradicted by the statement made to Petitioner by an ICE officer that Italy had rejected him, but Respondents

provide no proof of this claim despite being explicitly ordered to do so by this Court. (*See* Order Granting Second Mot. Extend Time 2:15–18, ECF No. 11).  Courts in this circuit have regularly refused to find respondents' burden met where respondents have offered little more than generalizations regarding the likelihood that removal will occur.  In *Singh v. Gonzales*, the court found that respondents' burden was not met by a showing that "ICE [had] done all it can to obtain travel documents." *See* 448 F. Supp. 2d 1214, 1219 (W.D. Wash. 2006).  In *Singh*, the government had at least produced "two travel document requests [that were] sent to the Indian Embassy." *Id.* at 1220.  Here, Respondents have produced nothing of the sort.  Thus, Respondents' bare assertions that removal *could* possibly occur cannot satisfy their burden under *Zadvydas*.

In *G.A.A. v. Christopher Chestnut*, a court granted a habeas petition based on facts similar to those here. No. 1:25-cv-01102-EPG-HC, 2025 WL 3251316 (E.D. Cal. Nov. 21, 2025).  There, petitioner established that he was unable to be removed to his country of origin, and that while DHS had identified five potential countries for removal, none had accepted him. *Id.* at *3.  While respondents asserted that the removal process was "ongoing," they did "not provide any further details" and failed to identify any other country suitable for removal. *Id.* at *4.  Based on those showings, the court found that petitioner's removal was not reasonably foreseeable. *Id.*  Here, just as in *G.A.A.*, Petitioner has shown that he cannot be removed to his country of origin, no third country has accepted him, and ICE has not identified any other country suitable for removal. (First Amend. Pet. 17:1–10).

Six months since Petitioner was told that no country had yet accepted him, and almost eleven months since Italy was first identified as a possible country of removal, Petitioner remains detained.  In the face of such prolonged detention, the period qualifying as the "reasonably foreseeable future" has shrunk significantly, and the government's burden has grown.  Respondents have provided no argument as to why it has met that heavy burden and

has submitted no evidence that removal will be effectuated any time soon.  Accordingly, Petitioner's detention is unreasonable under *Zadvydas*, and he is entitled to habeas relief under the Fifth Amendment.

### B. Petitioner is Entitled to Meaningful Notice and Opportunity to Present a Fear-Based Claim to an IJ

Petitioner contends that ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection constitutes arbitrary and capricious agency action that violates the APA, 5 U.S.C. § 706. (First Amend. Pet. 18:8–10).  He also avers that he has a due process right to meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country. (*Id.* 21:15–17).  Respondents contend that Petitioner cannot succeed on his due process claim because no third-country removal has been identified, and thus due process protections have not yet been triggered. (First Amend. Pet. Resp. 6:5–12).

The Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.  "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)).  "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott, et al.*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F.Supp.3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)).  "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."*Andriasian*

*v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999)). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x. 724, 724 (9th Cir. 2016) (non-precedential memorandum disposition).

Further, Respondents' arguments are unavailing. If Petitioner is to be removed at all, it would be through a third-country removal. As both parties agree, Petitioner cannot be removed to Egypt or Italy, the only countries covered by his order of removal. This Court has previously ordered that a detained noncitizen be provided with meaningful notice and an opportunity to present a fear-based claim to an immigration judge in a similar situation. *See Cavieres Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994 (D. Nev. Nov. 6, 2025). Thus, in accordance with the ample case law above, the Court holds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country.[1]

### C. Scope of Relief

Petitioner requests that he be released immediately. (First Amend. Pet. 17:16–17). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific

---

[1] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted.[2] *See Zadvydas*, 533 U.S. at 699–700; *see also Trejo v. Warden of ERO El Paso East Montana*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *11 (W.D. Tex. Oct. 24, 2025) (ordering in the alternative that Petitioner be released from custody subject to reasonable terms of supervision under *Zadvydas*).

For the reasons discussed above, the Court grants this requested relief.

## V.  CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 17), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention immediately under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

**IT IS FURTHER ORDERED** that Respondent must file a notice on the docket no later than December 25, 2025, to certify compliance with the Court's order.

---

[2] 8 U.S.C. § 1231(a)(3) provides:
> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order, (ECF No. 19), is **DENIED** as **MOOT**.

The Clerk of Court is kindly directed to serve a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**IT IS SO ORDERED.**

**DATED** this __23__ day of December, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court